UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WARREN F. NELSON,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>SORRENTO TOWER APARTMENTS, SORRENTO TOWER DEVELOPMENT, LLC, d/b/a SORRENTO HOUSING PARTNERS, LP,<br><br>　　　　　　　　　Defendants. | Case No.:  3:21-CV-1554-GPC-JLB<br><br>**ORDER:**<br><br>**(1) GRANTING PLAINTIFF'S MOTION TO PROCEED IN FORMA PAUPERIS;**<br><br>**(2) GRANTING PLAINTIFF'S MOTION FOR AUTHORIZATION TO FILE DOCUMENTS ON CM/ECF SYSTEM; and**<br><br>**(3) DISMISSING IN PART PLAINTIFF'S COMPLAINT**<br><br>**[ECF Nos. 1, 2, 3]** |

**INTRODUCTION**

On September 1, 2021, Plaintiff Warren F. Nelson ("Plaintiff"), proceeding pro se, initiated this action against Defendant Sorrento Tower Apartments (and Sorrento Tower Development, LLC d/b/a Sorrento Housing Partners LP, collectively "Sorrento" or "Defendants").  ECF No. 1.  Plaintiff concurrently filed a motion to proceed in forma

1

pauperis ("IFP").   ECF No. 2, and moved the Court for authorization to file documents on the Case Management/Electronic Court Filing (CM/ECF) system for the Southern District of California.

For the reasons set forth below, the Court **GRANTS** Plaintiff's motion to proceed IFP, **GRANTS** Plaintiff's motion for CM/ECF Access, and sua sponte **DISMISSES IN PART** Plaintiff's Complaint.

The Court further directs the U.S. Marshal Service to effect service upon Defendants pursuant to 28 U.S.C. § 1915(d) and Federal Rule of Civil Procedure 4(c)(3).

If Plaintiff wishes to cure the deficiencies in his complaint as outlined below the Court orders that Plaintiff file an amended complaint **on or before January 21, 2022**.

## DISCUSSION

### I.     Motion for Leave to Proceed IFP

Any party instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $350.00. 28 U.S.C. § 1914(a).  An action may proceed despite a plaintiff's failure to prepay the entire fee only if the plaintiff is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a).  *See Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999).  Under 28 U.S.C. § 1915(a), the Court may waive the filing fee if a party demonstrates an inability to pay by submitting an affidavit reporting all assets of the individual.  28 U.S.C. § 1915(a).  The plaintiff must submit an affidavit demonstrating an inability to pay the filing fee, and the affidavit must include a complete statement of the plaintiff's assets.  *Id.* § 1915(a)(1).  When a plaintiff moves to proceed IFP, the court first "grants or denies IFP status based on the plaintiff's financial resources alone and then independently determines whether to dismiss the complaint" pursuant to 28 U.S.C. § 1915(e)(2) ("§ 1915(e)(2)").  *Franklin v. Murphy*, 745 F.2d 1221, 1226 n.5 (9th Cir. 1984).

In Plaintiff's Motion to Proceed IFP, Plaintiff states that he receives $796.00 in retirement each month, and that is his only source of income.  ECF No. 2 at 2.  Plaintiff has not been employed in the past two years.  *Id.*  Plaintiff has a total of $249.00 in his

bank accounts. *Id.* Plaintiff does not have any other significant assets such as real estate, stocks, bonds, or securities. *Id.* at 3. Plaintiff has regular monthly expenses in the amount of $521.00—$221 on housing, $200 on food, $50 on clothing, $25 on laundry, and $25.00 on transportation. *Id.* at 4-5. Plaintiff does not have any dependents, debts owed, or financial obligations. *Id.* at 3.

Based on Plaintiff's representations, the Court concludes that Plaintiff has demonstrated an inability to pay the filing fee. Accordingly, the Court **GRANTS** Plaintiff's motion for leave to proceed IFP.

## II. Sua Sponte Screening of Plaintiff's Complaint

### a. Legal Standard

A complaint filed by any person proceeding IFP, pursuant to 28 U.S.C. § 1915(a), is additionally subject to mandatory sua sponte screening. The Court must dismiss any complaint if at any time the Court determines that it is "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)–(iii); *Calhoun v. Stahl*, 254 F.3d 845 (9th Cir. 2001) (per curiam) ("[T]he provisions of 28 U.SC. § 1915(e)(2)(B) are not limited to prisoners."); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc). Section 1915(e)(2)(B) requires that a court reviewing a complaint filed pursuant to the IFP provisions of the section rule on its own motion to dismiss before directing that the complaint be served by the U.S. Marshal pursuant to Federal Rule of Civil Procedure 4(c)(2). *Lopez*, 203 F.3d at 1127.

The requirements under 28 U.S.C. § 1915(e)(2)(B)(ii) are analogous to those under Federal Rule of Civil Procedure (hereinafter "Rule") 12(b)(6). Under Rule 8, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a plaintiff need not give "detailed factual allegations," a plaintiff must plead sufficient facts that, if true, "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). To state a claim upon which relief may be granted "a complaint must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 547). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

"When there are well-pleaded factual allegations, a court should assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see also Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000) ("[W]hen determining whether a complaint states a claim, a court must accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff."); *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (noting that § 1915(e)(2) "parallels the language of Federal Rule of Civil Procedure 12(b)(6)").

In addition to the liberal pleading standards set out in Rule 8(a), a document filed pro se is "to be liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). When the plaintiff is appearing pro se, the court affords the plaintiff any benefit of the doubt. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2001); *Karim-Panahi*, 839 F.2d 621, 623 (9th Cir. 1988).

However, while the court "ha[s] an obligation where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)), it may not "supply essential elements of claims that were not initially pled." *Ivey v. Board of Regents of the University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

      b.      <u>Plaintiff's Factual Allegations</u>

Plaintiff Warren F. Nelson is a 64-year-old, retired, African-American man who currently lives in Minneapolis, Minnesota. ECF No. 1, Compl., at 2. Defendants are the Sorrento Tower Apartments, Sorrento Tower Development, LLC, and Sorrento Tower Housing Partners, L.P. (collectively, "Defendants" or "Sorrento"). *Id.*

Plaintiff rents an apartment at a Minneapolis Public Housing development, which is subsidized by the United States Department of Housing and Urban Development ("HUD"). *Id.*

Starting in 2018, Plaintiff initiated efforts to move to San Diego, California, through HUD's portability public housing program. As part of that process, Plaintiff contacted Sorrento Tower Apartments, requested an application, and received, completed and returned it through the mail. *Id.* at 1. By completing the application, Plaintiff added himself to the waiting list for an apartment at Defendants' development, through two HUD-funded programs (from which Defendants received funding). *Id.* at 1.

In March 2021, Plaintiff received a letter from a Sorrento representative contacting Plaintiff to schedule an appointment for Plaintiff to visit the property in San Diego. *Id.* at 3. Plaintiff called Sorrento on the same day to schedule an appointment to fill out a rental application, and other paperwork. *Id.* The appointment was scheduled for April 5, 2021, and Plaintiff traveled from Minneapolis to San Diego for the appointment on April 4. *Id.*

When filling out the rental application, Plaintiff answered "yes" to a question that asked "Does applicant have any felonies?" *Id.* Days later, Plaintiff received a rejection letter from Sorrento which stated: "We regret to inform you that your application has been declined. This action was in whole or in part, the result of information contained in a criminal history background report." *Id.* at 4. In the following weeks, Plaintiff attempted to contact someone at Sorrento, and received no response. *See id.* Plaintiff sought to initiate the informal appeals process as outlined. *Id.*

At the Appeal Hearing on May 5, 2021, Plaintiff "inquire about the Criminal background report. Instead, [Sorrento representative] Ms. Makihele presented Plaintiff's

application and alleged that Plaintiff put an "X" on the "YES" box that he was a SEX OFFENDER!" *Id.* at 5 (emphasis in original).  Plaintiff informed Sorrento that "this was untrue and that he never marked that box and that he has never even thought about such an evil crime, yet alone act on and commit" and that "Plaintiff kn[e]w this automatically disqualifies Plaintiff from occupancy in subsidize[d] housing HUD programs." *Id.* Plaintiff, who was living in Minnesota Public Housing funded by HUD, "gave Ms. Makihele a copy of a background check . . . used in obtaining subsidized housing in Minnesota, and explained to her that there is an alert module in HUD's database that interacts with the FBI's and that when an offense occurs it flags HUD's computer system." *Id.*  Plaintiff again requested a copy of the background report that disqualified him from Sorrento housing, and Sorrento stated "Sorrento Tower does not do a background check on applicants that check that they are sexual offenders." *Id.*  Plaintiff was told to scratch out the "YES" box, and initial it. *Id.*  Sorrento then told Plaintiff "that they would have to run an extensive investigative background check on all 50 states to verify Plaintiff' claim of innocence to this ridiculous but serious accusation." *Id.* Sorrento stated it could take between two and six weeks.

On May 13, 2021, Plaintiff attempted to contact Sorrento. *Id.* at 6.  He received a response the same day stating that the investigation could take up to six weeks. *Id.*  On May 25, 2021, Plaintiff requested copies of the criminal background report and rental application, but received no response. *Id.*  On June 15, 2021, Plaintiff received an email that his name had been reinstated and placed back on the Sorrento waitlist. *Id.*  He is told a Sorrento representative will contact him. *Id.*

Having received no response, on July 30, 2021, Plaintiff received an email from a new Sorrento employee with whom he had not previously interacted, which was identical to the March 17, 2021 email Plaintiff received from Sorrento inviting him to visit Sorrento in San Diego and fill out an application. *Id.*  The email did not include any information about the "next phase toward occupancy" or necessary documentation as promised by the June 15, 2021 email. *Id.*

  c. <u>Analysis</u>

Plaintiff's complaint brings five causes of action against Defendants, alleging Defendants are liable for violations of federal and state law, including the Fair Housing Act (42 U.S.C. §§ 3604(b), 3617), the Civil Rights Act (42 U.S.C. § 1981), a conspiracy to interfere with Plaintiff's civil rights (42 U.S.C. § 1985(3)), and state-law defamation (Cal. Civ. Code §§ 44, 45a).  In its sua sponte review of Plaintiff's claims, the Court addresses each cause of action in turn.

  i. *Counts I and III: Fair Housing Act*

Under 42 U.S.C. § 3604(b), a provision of the Fair Housing Act ("FHA"), it is unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." And under 42 U.S.C. § 3167, it is unlawful "to coerce, intimidate, threaten, or interference in the exercise or enjoyment of . . . any right granted by section . . . 3604."

In the Ninth Circuit, a plaintiff may establish a FHA discrimination claim under a theory of disparate treatment or disparate impact. *Gamble v. City of Escondido*, 104 F.3d 300, 304 (9th Cir. 1997).  "To bring a disparate treatment claim, the plaintiff must first establish a prima facie case. Adapted to this situation, the prima facie case elements are: (1) plaintiff's rights are protected under the FHA; and (2) as a result of the defendant's discriminatory conduct, plaintiff has suffered a distinct and palpable injury. Establishing the prima facie case affords the plaintiff a presumption of discrimination." *Harris v. Itzhaki,* 183 F.3d 1043, 1051 (9th Cir. 1999) (citing *Lowe v. City of Monrovia*, 775 F.2d 998 (9th Cir. 1985)).  "After the plaintiff has established the prima facie case, the burden then must shift to the defendant to articulate some legitimate, nondiscriminatory reason for the action." *Harris*, 183 F.3d at 1051.

Here, Plaintiff alleges "Defendant(s) discriminated against [Plaintiff] by: Passing over [Plaintiff's] application for rental in favor of White Applicants based on falsehoods and deception."  ECF No. 1 at 12.  Further, Plaintiff alleges that Defendants intentionally

altered his rental application to say that Plaintiff was a sexual offender in order to prevent him from living in Sorrento Tower. Defendants also took actions that unnecessarily delayed the review process, including failing to respond to Plaintiff's messages and inquiries, and failing to provide Plaintiff with copies of his rental application and the criminal background report that he requested. Based on the factual allegations in Plaintiff's complaint, the Court finds there is "sufficient factual matter, accepted as true" to state a claim based on disparate treatment in Plaintiff's efforts to be housed in Sorrento Tower, that are "plausible on its face," *Iqbal*, 556 U.S. at 678, and sufficient to survive the "low threshold" set for sua sponte screening.

        ii.    *Counts II and V: Civil Rights Act, 42 U.S.C. §§ 1981 and 1985(3)*

Under the Civil Rights Act, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . ." which includes "the making, performance, modification, termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. §§ 1981(a), (b).

Under § 1981 a plaintiff "bears the burden of showing that race was a but-for cause of its injury." *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 140 S.Ct. 1009, 1014 (2020). In *Comcast*, the Supreme Court rejected the motivating-factor test the Court adopted for Title VII cases in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). *See Comcast*, 140 S.Ct. at 1017. Therefore, "to prevail" on a § 1981 claim, "a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Id.* at 1019. In the Ninth Circuit, to establish a prima facie case of racial discrimination in contracts, a plaintiff is required to demonstrate: (1) membership in a protected class; (2) an attempt to contract for certain services; (3) denial of the right to contract for those services; and (4) plaintiff was deprived while similarly situated persons outside the protected class were not. *Lindsey v. SLT Los Angeles*, LLC, 447 F.3d 1138, 1145 (9th Cir. 2005).

Here, Plaintiff has alleged that Defendants discriminated against Plaintiff, and that it was the true reason his rental application to live in Sorrento Tower was denied.  At this time, Plaintiff has not pleaded sufficient facts to suggest that Plaintiff's race was the but-for cause for why Defendants denied him a rental contract.  As Plaintiff alleges, Defendants "secretly attempt[ed] to cover up the discrimination and unlawful acts committed" by "forging government documents."  ECF No. 1 at 13.  However, Plaintiff does not plead sufficient facts that similarly-situated White applicants who sought housing through the HUD-funded programs were offered housing, while Plaintiff was not.

Plaintiff also seeks relief under 28 U.S.C. § 1985(3), a statute that makes it unlawful for "two or more persons in any State . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws" and "the party so injured or deprived may have an action for the recovery of damages . . . ."  The conspiracy alleged by Plaintiff is based on the violation of § 1981, discussed above. Because the Court found that Plaintiff has failed to plead sufficient facts to state a claim under § 1981, the Court reaches the same conclusion as to the conspiracy statute. Accordingly, the Court sua sponte **DISMISSES** Counts II and V of Plaintiff's complaint, and **GRANTS** Plaintiff leave to amend.

### iii.   *Count IV: State-Law Defamation Per Se*

Finally, Plaintiff brings a claim under California state-law defamation per se in violation of California Civil Code § 45 because Defendants "made fabricated false and defamatory statements about [Plaintiff]; in particular, that [Plaintiff] was a Sexual Predator and Offender and knew the statements to be deceitful and untrue."  ECF No. 1 at 14.

Under California's defamation per se statute, "libel is false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him

to be shunned or avoided, or which has a tendency to injury him in his occupation." Cal. Civ. Code § 45.  A statement is defamation per se if it defames the plaintiff on its face, without the need for extrinsic evidence to explain the statement's defamatory nature. *Yow v. National Inquirer, Inc.*, 550 F. Supp. 2d 1179, 1183 (E.D. Cal. 2008).  A private figure plaintiff bringing a defamation claim must prove that the defendant was negligent with respect to the truth or falsity of the allegedly defamatory statements.

Here, Plaintiff alleges that "Defendant(s) directly or indirectly communicated their lies and defamatory statements about [Plaintiff] to others at the San Diego Public Housing Authority, the California Housing Finance Agency and the U.S. Department of Housing and Urban Development." ECF No. 1 at 14.  As a result, Plaintiff alleges the statements "had a tendency to harm, and have in fact seriously harmed, [Plaintiff's] reputation in the estimation of the community, in particular making it increasingly difficult in the future to find housing and cause significant delay in [Plaintiff's] ability to find subsidize housing to rent in San Diego, CA." *Id.*

The Court finds that Plaintiff has alleged sufficient facts, taken as true, to state a claim under California's defamation per se statute.  Plaintiff alleges that he did not indicate on his application that he was a sexual offender.  ECF No. 1 at 5.  He alleges that when his rental application was denied, and he was finally able to schedule an Appeal Hearing, Sorrento showed him an application that did in fact have the box checked which would indicate Plaintiff was a sexual offender.  *Id.*  However, from the beginning of the process, Defendants were aware that Plaintiff was living in HUD-funded subsidized housing in Minneapolis, and he would not have qualified for such housing if that were true.  Notwithstanding that fact, Defendants did not run a background check on Plaintiff and purportedly reported to the San Diego Public Housing Authority, and others, that Sorrento denied Plaintiff's application because he was a sexual offender.  *Id.*  Because Defendants knew that Plaintiff lived in HUD-subsidized housing, which required that he *not* be a sexual offender, Sorrento had a duty to confirm whether that was true before they relayed this information to state and federal government entities.  Further, the

allegedly false accusation that a person is a sexual offender is, "on its face" defamatory, as it accuses a person of committing a serious crime that certainly would tend to harm a person's reputation in a community. Accordingly, the Court finds that Plaintiff's defamation cause of action may go forward.

## CONCLUSION

For the foregoing reasons, the Court hereby:

(1) **GRANTS** Plaintiff's motion to proceed IFP;

(2) **GRANTS** Plaintiff's motion for CM/ECF access; and

(3) sua sponte **DISMISSES Counts II and V** of the Complaint.

Plaintiff may choose to amend his complaint to cure the deficiencies outlined above, and is directed to file any amended complaint **on or before January 21, 2022**.

The Court directs the U.S. Marshal Service to effect service upon Defendants pursuant to 28 U.S.C. § 1915(d) and Federal Rule of Civil Procedure 4(c)(3).

**IT IS SO ORDERED.**

Dated: December 14, 2021

Hon. Gonzalo P. Curiel
United States District Judge