**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WARREN F. NELSON,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>SORRENTO TOWER APARTMENTS, et al.,<br><br>　　　　　　　　　Defendants. | Case No.: 3:21-cv-01554-RBM-JLB<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6)**<br><br>**[Doc. 28]** |

On April 15, 2022, Defendants Sorrento Tower Development, LLC, and Sorrento Tower Housing Partners LP ("Defendants" or "Sorrento Tower") filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) ("Motion"). (Doc. 28.) Plaintiff Warren Nelson ("Plaintiff") filed an opposition on April 28, 2022. (Doc. 32.) Defendants filed a reply on May 9, 2016 (Doc. 37), and Plaintiff filed a surreply on May 16, 2022 without leave of Court (Doc. 38). For the foregoing reasons, Defendants' Motion is **GRANTED**.

### I.　　BACKGROUND

Plaintiff resides in Minneapolis, Minnesota at a public housing apartment subsidized by the U.S. Department of Housing and Urban Development. (Doc. 10 at 3.) On July 8, 2019, Plaintiff applied for housing at Sorrento Tower, a housing complex located in San Diego, California. (Doc. 28–1 at 6.) Sorrento Tower is a recipient of federal and state low-

1

income funding and grants subsidized by the U.S. Department of Housing and Urban Development. (Doc. 10 at 3.) On March 17, 2021, Sorrento Tower sent Plaintiff a letter informing him that he was in the top ten of housing applicants on the waitlist and would need to schedule an interview and that, if Plaintiff failed to schedule an interview, his application would be cancelled. (Doc. 12, Ex. 1; Doc. 28–1 at 6.) Plaintiff scheduled an interview for April 5, 2021 and flew from Minneapolis to San Diego on April 4, 2021. (Doc. 10 at 4.)

On April 5, 2021, Plaintiff met with a representative of Sorrento Tower and filled out an Application for Admission and Rental Assistance and a Background Screening Consent Form. (Doc. 28–1 at 6; Doc. 32 at 6.) On April 8, 2021, Sorrento Tower mailed Plaintiff a letter informing him his application was denied because of his criminal history, and Plaintiff subsequently requested an appeal hearing. (Doc. 28–1 at 7.) Plaintiff had his appeal hearing on May 5, 2021, and Sorrento Tower "informed Plaintiff the denial was because he had checked the box 'yes' for being a registered sex offender, which automatically disqualified him from occupancy." (*Id.*) When Plaintiff insisted he never marked that box, he was instructed to "scratch out the 'X' and initial it, which Plaintiff did." (Doc. 10 at 6.) Sorrento Tower then allowed Plaintiff to amend his application. (Doc. 28–1 at 7; Doc. 32 at 7–8.) Plaintiff requested a copy of his background check and was informed no background check existed because Sorrento Tower automatically disqualifies individuals who check the box as registered sex offenders. (Doc. 28–1 at 7.)

A representative of Defendants "indicated they would have to run an extensive investigative background check on all 50 states to verify Plaintiff's claim of innocence to this serious accusation." (Doc. 10 at 6.) On May 13, 2021, Plaintiff inquired about an update on the second criminal background report, and "Sorrento Tower emailed Plaintiff that the preliminary report indicated that he had failed the pre-screening criteria, but Sorrento Tower had ordered an out-of-state request and would contact Plaintiff once that request was completed." (Doc 28–1 at 7.) On June 15, 2021, Sorrento Tower emailed Plaintiff and stated the out-of-state background check was complete and that Plaintiff was

again added to the waitlist. (*Id.*) Once Plaintiff reached the top of the waitlist, he would again need to schedule an interview. (*Id.*) On July 30, 2021, Sorrento Tower contacted Plaintiff and informed him he was on the top of the waitlist and that his application would be cancelled if he did not schedule an interview by August 13, 2021. (*Id.* at 7–8.)

On August 17, 2021, Sorrento Tower mailed Plaintiff a letter explaining his application was cancelled because he failed to schedule an interview and that he had fourteen days to appeal the decision. (*Id.* at 8.) On November 1, 2021, Plaintiff received a copy of his consumer report from LeasingDesk, a consumer reporting agency that provides background data on tenants and rental applicants. (*Id.*) Plaintiff claims the report indicates "[a] factual credit/criminal report was requested by Defendants only one time and that was one day after the Informal Appeal Hearing on May 5, 2021." (Doc. 32 at 11.) Plaintiff believes this information shows Defendants lied to Plaintiff. (*Id.*)

On January 21, 2022, Plaintiff filed an action against Defendants alleging violations of: (1) 42 U.S.C. § 3604(b), (2) 42 U.S.C. § 1981, (3) 42 U.S.C. § 3617, (4) California Civil Code §§ 44, 45(a), (5) 42 U.S.C. § 1985(3), (6) 42 U.S.C. §§ 3601–19, and (7) 15 U.S.C. § 1691. (*See* Doc. 10.) Plaintiff generally contends that he was racially discriminated against by Defendants because Defendants rejected his housing application and falsified information to indicate he is a registered sex offender. (*Id.* at 2, 6.) On April 15, 2022, Defendants filed the instant Motion arguing that Plaintiff lacks Article III standing for failure to prove any injury and that Plaintiff's complaint fails to state any cognizable claim against Defendants. (Doc. 28 at 6, 10.)

## II.  LEGAL STANDARD

In order to establish standing to bring an action under Article III of the Constitution, a plaintiff must show that:

> (1) she has suffered an "injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical"; (2) there exists "a causal connection between the injury and the conduct complained of"; and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

3

*Phelps v. Navient Sols., Inc.*, No. 216CV2798GEBKJNPS, 2017 WL 68172, at *2 (E.D. Cal. Jan. 6, 2017) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

Moreover, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), an action may be dismissed for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Moreover, when an action is filed by a pro se litigant, "the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). "A pro se litigant must be given leave to amend his or her complaint unless it is 'absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" *Noll v. Carlson*, 809 F.2d 1446, 1447 (9th Cir. 1987) (quoting *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980)). However, in giving liberal interpretation to a pro se complaint, courts may not "supply essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Id.*

### III.   DISCUSSION

#### A.   Standing

Defendants argue that Plaintiff lacks Article III standing because he "fails to plead he suffered any actual injury for any of his causes of action in his twenty-seven page

complaint." (Doc. 28–1 at 10.) Defendants explain that "Plaintiff relies solely on conclusory statements to allege injury, that Sorrento Tower 'caused to be done injury to Plaintiff in his person and property, and deprived Plaintiff, using discriminatory unlawful conduct from having and exercising his right and privilege of a citizen of the United States, in favor of white citizens.'" (Doc. 28–1 at 10 (quoting Doc. 10 at 14, 25–26).) While Plaintiff does allege he entered a homeless shelter and contracted food poisoning, Plaintiff fails to show how such harm was the result of any action by Defendants. (Doc. 28–1 at 11.) "There is simply no causal nexus between Plaintiff's stay at a homeless shelter or contracting food poisoning and Sorrento Tower's actions." (*Id.*) Additionally, "considering the fact that Sorrento Tower continued to process Plaintiff's application, and only cancelled the application when Plaintiff stopped responding, Plaintiff cannot plead any facts to show he suffered an injury-in-fact." (*Id.*) Therefore, Defendants request the Court dismiss this action for failure to establish Article III standing. (*Id.*)

Plaintiff counters that he is injured as a result of Defendants' "discriminatory unlawful conduct" which prevented Plaintiff from obtaining housing at Sorrento Tower. (Doc. 10 at 14.) Moreover, Plaintiff explains that on May 31, 2021, he entered a homeless shelter in San Diego and contracted food poisoning. (*Id.* at 16.) As a result, Plaintiff stayed at Sharp Memorial Hospital and "suffered in pain in intensive care." (*Id.*) After staying three and a half months in San Diego, Plaintiff's son "wired Plaintiff money to return back to Minnesota on or around July 15, 2021." (*Id.*) Plaintiff also makes broad allegations of harm including "injuries of un-necessary undue hardship; poverty; suffering; homelessness; starvation; intimidation; extortion; fear; assault; victim of thefts; surrounded by drugs and drug addicts and lastly, the everyday fear of contracting Covid 19 and finally medical emergency treatment in San Diego." (*Id.* at 21.)

The Court finds such broad allegations of harm insufficient to establish an injury-in-fact. *See Strojnik v. Capitol Regency, LLC*, No. 219CV01587MCEKJNPS, 2021 WL 1721682, at *5 (E.D. Cal. Apr. 30, 2021) (concluding the plaintiff's "broad and conclusory allegations" were "insufficient to establish an injury-in-fact"); *see also Barnes v. Marriott*

*Hotel Servs., Inc.*, No. 15-CV-01409-HRL, 2017 WL 635474, at *7 (N.D. Cal. Feb. 16, 2017) ("the injury alleged by the plaintiff . . . cannot be based only on conclusory statements unsupported by specific facts").

In regard to the alleged discriminatory practices prohibiting Plaintiff from obtaining housing at Sorrento Tower, the Court finds Plaintiff again fails to establish an injury-in-fact. *See Battle Mountain Band of Te-Moak Tribe of W. Shoshone Indians v. United States Bureau of Land Mgmt.*, 302 F. Supp. 3d 1226, 1234 (D. Nev. 2018) (quoting *Lujan*, 504 U.S. at 560) (noting an injury-in-fact occurs when "the plaintiff has suffered an 'invasion of a legally protected interest' that is both 'concrete and particularized,' and 'actual or imminent, not conjectural or hypothetical'"). The Court acknowledges some confusion with regard to whether Plaintiff marked the box indicating he was a registered sex offender. In construing all the well-pleaded allegations in the complaint as true, the Court can rely upon Plaintiff's assertion that he did not actually mark the sex offender box. (Doc. 10 at 6, ¶ 24.) However, this mistake on the application by itself, is insufficient to establish causation of injury because once Defendants were notified of the mistake, it was immediately cured. *See Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011) (quoting *Allen v. Wright*, 468 U.S. 737, 757 (1984)) ("[t]o survive a motion to dismiss for lack of constitutional standing, plaintiffs must establish a 'line of causation' between defendants' action and their alleged harm that is more than 'attenuated'"); *see also Harris v. Itzhaki*, 183 F.3d 1043, 1050 (9th Cir. 1999) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 364 (1982)) (to establish a claim under the Fair Housing Act, a plaintiff must allege "that as a result of the defendant's [discriminatory conduct] he has suffered a distinct and palpable injury"). Moreover, it is pure speculation as to the timing of when and if Plaintiff would have moved off the waitlist. While it may have been frustrating for Plaintiff to reinitiate the application process, it seems Defendants gave Plaintiff ample opportunity to do so, and Plaintiff was not outrightly prohibited from residing at Sorrento Tower.

Moreover, Plaintiff fails to show that his alleged injury regarding his stay at a homeless shelter and contracting food poisoning is sufficiently related to Defendants'

conduct. Plaintiff has not pled a causal nexus between staying at a homeless shelter and Defendants' initial denial of Plaintiff's application. *See City of Los Angeles v. Wells Fargo & Co.*, 22 F. Supp. 3d 1047, 1053 (C.D. Cal. 2014) (finding the "causal chain" between the alleged injury and the alleged conduct is "too attenuated" when there are too many links in the causal chain); *see also Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 41 (1976) (noting that Article III "requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant"). Plaintiff had housing in Minnesota at the time he applied for housing at Sorrento Tower, and there are no facts to indicate Defendants knew Plaintiff would be staying at a homeless shelter.

Lastly, Plaintiff contends Defendants injured and/or discriminated against Plaintiff by "[u]ploading electronic filings with this fraudulent information uploaded onto [San Diego Public Housing Authority] Landlord Portal and federal databases such as [U.S. Department of Housing and Urban Development's] Enterprise Income Verification national database." (Doc. 10 at 18.) The complaint lacks any allegations as to whether such information being uploaded onto these databases has prohibited Plaintiff from securing housing which may arguably support a finding of causation of injury. As far as the Court is aware, Plaintiff resides at his same housing in Minnesota, and he has not attempted to apply for housing elsewhere. To the extent such injury is unclear, Plaintiff may amend his complaint to sufficiently plead an injury and establish Article III standing.

B. <u>Failure to State a Claim</u>

Even if Plaintiff could clearly establish standing, the allegations in the complaint are insufficient to state a claim against Defendants.

i. *Claim One – 42 U.S.C. § 3604(b)*

Plaintiff's first cause of action alleges that Defendants violated the Fair Housing Act ("FHA") under 42 U.S.C. § 3604, which states that it is unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." (Doc. 10 at 16–18); 42 U.S.C.A. § 3604 (West).

7

Defendants counter that Plaintiff "fails to plead non-conclusory allegations" and that "Plaintiff pleads a variety of alleged 'facts' which he believes constitute discrimination, but are no more than legal conclusions." (Doc. 28–1 at 12.)

Plaintiff makes several accusations including that Defendants passed over Plaintiff's application in favor of white applicants, failed to protect Plaintiff from discrimination, altered and forged Plaintiff's application with the intent to not allow him into the complex, refused to allow Plaintiff to review his file, etc. (Doc. 10 at 17.) However, the Court finds these allegations are conclusory and are insufficient to state a claim that Defendants discriminated against Plaintiff in violation of section 3604. *See Ashcroft*, 556 U.S. at 686 ("the Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context"). As previously discussed, Defendants allowed Plaintiff to amend his application as soon as Plaintiff acknowledged the error, and Plaintiff was not ultimately denied housing. (*See* Doc. 10 at 6; Doc. 28–1 at 7–8.) While Plaintiff claims Defendants refused to run a background check or provide him with information in his file, the complaint lacks any information as to whether Defendants' actions were motivated by Plaintiff's race (*see* Doc. 10 at 17–18) as Defendants explain they did not initially run a background check because applicants who indicate they are a registered sex offender are automatically disqualified from housing. *See Cabrera v. Alvarez*, 977 F. Supp. 2d 969, 976 (N.D. Cal. 2013) ("[t]he complaint alleges no facts from which the Court can reasonably infer that defendants subjected plaintiffs to explicitly differential treatment"); *Bryant v. Steinburg*, No. 222CV1308TLNKJNPS, 2022 WL 4961813, at *4 (E.D. Cal. Oct. 4, 2022) (explaining the plaintiff "fails to allege facts to allow the court to reasonably infer discriminatory conduct against a protected class"); *see also Moralez v. Whole Foods Mkt. California, Inc.*, No. 14-CV-05022-EMC, 2016 WL 845291, at *2 (N.D. Cal. Mar. 4, 2016) (finding that "Plaintiff pleads no facts that demonstrate any of the actions that occurred were related to racial discrimination. At most, Plaintiff alleges her personal belief that . . . there is 'no other explanation for her disparate treatment' other than her race").

/ / /

As noted above, even if Plaintiff alleged facts sufficient to state a claim, Plaintiff has not shown an injury-in-fact. *See supra* pp. 4–7. Defendants allowed Plaintiff to amend the inaccuracy in his application and placed Plaintiff back at the top of the waitlist. (Doc. 28–1 at 7–8.) Thus, the Court finds Plaintiff's first cause of action fails to state a claim.

    ii. *Claim Two – 42 U.S.C. § 1981*

Plaintiff's second cause of action alleges a violation of 42 U.S.C. § 1981 which provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . . ." 42 U.S.C.A. § 1981 (West). To establish a claim pursuant to section 1981, a plaintiff must show that he: (1) is a member of a protected class, (2) attempted to contract for certain services, and (3) was denied the right to contract for those services. *Lindsey v. SLT Los Angeles, LLC*, 447 F.3d 1138, 1145 (9th Cir. 2006).

Plaintiff asserts many of the same broad allegations of discrimination against Defendants to support this cause of action. (*See* Doc. 10 at 19–21.) While Plaintiff is a member of a protected class and attempted to secure housing at Sorrento Tower, Plaintiff does not plead any facts to show that he was "denied the right to contract for those services" or denied housing. The Court again notes that Plaintiff was reinstated to the Sorrento Tower waitlist, and his application was only cancelled because he did not schedule an interview. (Doc. 28–1 at 7–8); *see Clark v. Safeway, Inc.*, 478 F. Supp. 3d 1080, 1088 (D. Or. 2020) (explaining that "Plaintiff must establish intentional discrimination; disparate impact is insufficient to establish a claim under section 1981"); *see also Domingo v. New England Fish Co.*, 727 F.2d 1429, 1438 (9th Cir.), *modified*, 742 F.2d 520 (9th Cir. 1984) ("proof of intent to discriminate is necessary to establish a violation of 42 U.S.C. § 1981"). Thus, the Court concludes Plaintiff fails to state a claim as to this cause of action.

    iii. *Claim Three – 42 U.S.C. § 3617*

Plaintiff's third cause of action alleges that Defendants violated the FHA under 42 U.S.C. § 3617, which prohibits retaliation against any "person in the exercise or enjoyment of, any right granted or protected" by the FHA. 42 U.S.C.A. § 3617 (West). Plaintiff

alleges that on April 22, 2021 he sent a letter to Defendants asserting his right to an appeal hearing and that, in response, Defendants "continued to delay; lie; provide misinformation, and simply ignore Plaintiff's requests and failed to protect him from further continued harassment and retaliation." (Doc. 10 at 21.) Plaintiff then states Defendants "intentionally made Plaintiff wait 113 days from the date of April 8, 2021[] to send Plaintiff another generic letter identical to the March 17, 2021 letter to again, 'bait' Plaintiff and repeat their unlawful little games." (*Id.* at 22.)

Defendants counter that "Plaintiff fails to plead facts that he was subjected to any adverse action or that there was any causal nexus between a protected activity and an adverse action." (Doc. 28–1 at 15.) Moreover, "Sorrento Tower continued processing Plaintiff's application up until Plaintiff failed to contact Sorrento Tower to schedule an interview after he had reached the top of the waitlist, [and] Plaintiff cannot plead any facts to show he suffered an injury as a result of any alleged wrongdoing." (*Id.*)

The Court does not find any allegations of retaliation based on the conduct described in the complaint. Moreover, Plaintiff's allegations are broad, and he does not assert facts to show he was subjected to any adverse action by Defendants. *See Walker v. City of Lakewood*, 272 F.3d 1114, 1128 (9th Cir. 2001) ("[t]o establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a protected activity; (2) the defendant subjected him to an adverse action; and (3) a causal link exists between the protected activity and the adverse action"). Rather, Plaintiff was permitted to amend his housing application upon notifying Defendants of the inaccuracy, which belies any evidence of retaliation. Thus, based on the facts alleged, Plaintiff fails to state a claim pursuant to 42 U.S.C. § 3617.

>       *iv.*    Claim Four – California Civil Code §§ 44, 45a

Plaintiff's fourth cause of action alleges a violation of California Civil Code §§ 44 and 45a. (Doc. 10 at 22.) California Civil Code § 44 provides that defamation is effected by either libel or slander. Cal. Civ. Code § 44 (West). California Civil Code § 45a provides that "[a] libel which is defamatory of the plaintiff without the necessity of explanatory

matter, such as an inducement, innuendo or other extrinsic fact, is said to be a libel on its face. Defamatory language not libelous on its face is not actionable unless the plaintiff alleges and proves that he has suffered special damage as a proximate result thereof." Cal. Civ. Code § 45a (West). "Defamation requires the intentional publication of a false statement of fact that has a natural tendency to injure the plaintiff's reputation or that causes special damage." *Burrill v. Nair*, 217 Cal. App. 4th 357, 383 (2013). The elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage. *Wong v. Jing*, 189 Cal. App. 4th 1354, 1369 (2010).

Plaintiff alleges that "Defendants fabricated false and defamatory statements about [Plaintiff]; in particular, that [Plaintiff] was a sex offender and knew the statements to be untrue." (Doc. 10 at 22.) Plaintiff further explains that "Defendants directly or indirectly communicated their lies and defamatory statements about [Plaintiff] to others, including officials at the San Diego Public Housing Authority, and the U.S. Department of Housing and Urban Development." (*Id.*)

Defendants counter that "Plaintiff pleads only conclusory facts that Sorrento Tower published defamatory statements about him" and that he "provides no facts to indicate how Sorrento Tower made the defamatory statements." (Doc. 28–1 at 20–21.) Additionally, "Plaintiff fails to plead that he suffered any special damages with respect to his property, business, trade, profession, or occupation as required by California Civil Code section 48a(d)(2)." (*Id.* at 21.)

As previously noted, the complaint lacks allegations as to whether information being uploaded onto these databases has prohibited Plaintiff from securing housing or caused other injury. *See supra* p. 7; *see also Twombly*, 550 U.S. at 570 (an action may be dismissed for failure to allege "enough facts to state a claim to relief that is plausible on its face"). The complaint likewise fails to describe how Defendants made a defamatory statement. Plaintiff states that "Defendants directly or indirectly communicated their lies," so it is not clear whether the statements were in fact published, and Plaintiff does not provide any facts

to show Defendants knew the information was false. Finally, Plaintiff's allegations regarding the defamation claim are brief and conclusory, pleading only general accusations. Thus, the Court concludes Plaintiff's complaint fails to sufficiently plead a cause of action pursuant to California Civil Code §§ 44 and 45a.

> v. *Claim Five – 42 U.S.C. § 1985(3)*

Plaintiff's fifth cause of action alleges that Defendants violated 42 U.S.C. § 1985(3). "To state a cause of action under section 1985(3), 'a complaint must allege (1) a conspiracy, (2) to deprive any person or a class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States.'" *Bartling v. Glendale Adventist Med. Ctr.*, 184 Cal. App. 3d 961, 972 (Ct. App. 1986) (quoting *Gillespie v. Civiletti*, 629 F.2d 637, 643 (9th Cir. 1980)).

Here, Plaintiff alleges Defendants "discriminated against [Plaintiff's] right to contract by effectively collaborating together to force [Plaintiff] to endure undue hardship[], suffering; homelessness; starvation; emergency medical attention and treatment due to forgery and misuse of government documents and delay of due process." (Doc. 10 at 23.) In particular, Plaintiff states "Defendants lied that they procured background reports on April 8, 2021; May 13, 2021; June 15, 2021" and that "Defendants conspire[d] to prevent Plaintiff from equal protection of the laws; who was lawfully entitled to obtain housing at Defendant's [sic] housing complex." (*Id.*)

Again, the Court finds these allegations conclusory. Plaintiff does not provide any plausible factual allegations of Defendants' alleged wrongdoing. *See Ashcroft*, 556 U.S. at 678 (2009) ("[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Moreover, Plaintiff does not describe any specific conspiracy or any injury that may have resulted. *See Blank v. Kirwan*, 39 Cal. 3d 311, 320 (1985) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)) ("to state a cause of action under

section 1985(3), a party must allege, inter alia, 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action'"). Even if Plaintiff's housing application was initially denied, Defendants immediately cured the error, and Plaintiff was placed back on the waitlist and advised to schedule an interview. (*See* Doc. 28–1 at 7–8.) Therefore, Plaintiff's allegations are insufficient, and Plaintiff fails to state a claim pursuant to this cause of action.

> vi.   *Claim Six – 42 U.S.C §§ 3601–19*

Plaintiff also claims Defendants violated 42 U.S.C. §§ 3601–19 by failing "to provide [Plaintiff] with the right to the same enjoyment of all benefits, privileges, terms and conditions . . . that are enjoyed by white citizens." (Doc. 10 at 24.) Specifically, Plaintiff argues Defendants discriminated against Plaintiff's right to contract by "[i]ntentionally denying Plaintiff occupancy to Defendant's properties under false pretenses in their 198-unit [U.S. Department of Housing and Urban Development] subsidized housing complex; by carefully crafted schemes to cheat the system in which they have maintained this unbalance [sic] in tenant occupancy at their almost white subsidized housing complex." (*Id.*)

Plaintiff relies solely on conclusory statements in asserting these claims and provides no factual support. *See Ivey*, 673 F.2d at 268 ("[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss"). Therefore, the Court finds Plaintiff fails to state a cause of action as to this claim.

> vii.   *Claim Seven – 15 U.S.C. § 1691*

Lastly, Plaintiff alleges Defendants discriminated against Plaintiff in violation of 15 U.S.C. § 1691 which provides that "[i]t shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C.A. § 1691 (West). Plaintiff alleges that Defendants refused "Plaintiff the right to be provided exact copies of the back ground [sic] report [D]efendants used in their adverse action on April 8,

2021." (Doc. 10 at 25.)  Moreover, Plaintiff argues that Defendants violated 15 U.S.C. § 1681m(b)(2) by failing to provide Plaintiff with a detailed statement explaining the adverse action.  (*Id.*)  Plaintiff states that on April 13, 2021, he emailed a representative of Defendants "requesting specific information acquired by Defendants that disqualified Plaintiff's application."  (*Id.* at 5.)  Plaintiff argues Defendants were required to disclose the information within thirty days. (*Id.* at 25.)  Plaintiff claims that a statement explaining the adverse action "was never submitted by Defendant[s] based on ulterior motives of racial profiling and discrimination." (*Id.*)

Defendant counters that Plaintiff's claims for violation of 15 U.S.C. § 1681m fail as a matter of law because Defendants are not a consumer reporting agency and civil actions are not permitted to enforce this code section. (Doc. 28–1 at 22.) Section 1681m "requires the users of credit reports to notify the consumer if adverse action, or an offer of credit on terms that are materially less favorable than the terms offered to other customers, is based on information in a credit report." (*Id.* at 23.) Defendant explains that "Plaintiff confusingly argues that Sorrento Tower had an obligation to provide Plaintiff with a consumer report.  However, as the statute makes clear, Sorrento Tower only had an obligation to notify Plaintiff if an adverse action was being taken, which they did." (*Id.*) Plaintiff's failure to request the report from the consumer agency and instead request it from Sorrento Tower, "cannot create a duty for Sorrento Tower." (*Id.*) Moreover, "Plaintiff seems to be alleging that Sorrento Tower did not provide him with the consumer report that resulted in his initial denial of residency in April 2021. However, Sorrento Tower had yet to request a consumer report on Plaintiff in April 2021." (*Id.*)

In reviewing the complaint, it appears Plaintiff is alleging Defendants failed to provide a report that resulted in his initial application denial on April 8, 2021. (*See* Doc. 10 at 25.) However, the complaint fails to allege whether Defendants generated any report. In any event, the complaint fails to allege facts to suggest that Defendants are classified as a consumer reporting agency. *See* 15 U.S.C.A. § 1681a (West) (explaining a consumer agency is defined as "any person which, for monetary fees, dues, or on a cooperative

nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information . . . for the purpose of furnishing consumer reports to third parties"). Therefore, based on the allegations in the complaint, the Court find Plaintiff has not stated a plausible cause of action pursuant to this claim.

### C. Leave to Amend

In light of Plaintiff's pro se status, the Court grants Plaintiff leave to amend his complaint in order to attempt to address the pleading deficiencies. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("[a] district court should not dismiss a pro se complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)] unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment'") (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)).

## IV.  CONCLUSION

Based on the foregoing, the Court:

1. **GRANTS** Defendants' Motion.  (Doc. 28.)

2. **DISMISSES** Plaintiff's complaint for lack of Article III standing and failure to state a claim upon which relief may be granted.

3. **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to file an amended complaint which cures all the deficiencies of pleading noted. Plaintiff is specifically advised that his amended pleading must establish Article III standing and must specifically detail the alleged conduct and how such conduct violates federal or state law. Conclusory allegations unsupported by specific allegations of fact are insufficient to properly comply with the Federal Rules of Civil Procedure.

**If Plaintiff fails to file an amended complaint within the time provided, the Court will enter a final order dismissing this civil action based both on Plaintiff's failure to state a claim upon which relief can be granted and his failure to prosecute in compliance with a court order requiring amendment**. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("[i]f a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal

of the entire action").

**IT IS SO ORDERED.**

DATE: November 7, 2022

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE