1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

WARREN F. NELSON,

                       Plaintiff,

v.

SORRENTO TOWER APARTMENTS, et al.,

                       Defendants.

Case No.:  3:21-cv-01554-RBM-JLB

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT UNDER FED. R. CIV. P. 12(b)(6)**

**[Doc. 45]**

18

19

20

21

22

23

24

25

26

27

28

     On November 17, 2022, Plaintiff Warren Nelson ("Plaintiff") filed a Second Amended Complaint. (Doc. 44.)  On December 1, 2022, Defendants Sorrento Tower Development, LLC, and Sorrento Tower Housing Partners LP ("Defendants" or "Sorrento Tower") filed a Motion to Dismiss Plaintiff's Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion"). (Doc. 45.)  On December 30, 2022, Plaintiff filed a "Memorandum of Points and Authorities and Plaintiff's Motion for Sua Sponte Screening of Plaintiff's Second Amended Complaint" which the Court will liberally construe as Plaintiff's opposition. *See Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988) (when an action is filed by a pro se litigant, "the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt"); *see also Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).  Defendants filed a reply on

1

1    December 30, 2022 (Doc. 49).   For the foregoing reasons, Defendants' Motion is

2    **GRANTED**.

3                                 **I.      BACKGROUND**

4        Plaintiff resides in Minneapolis, Minnesota, and on July 8, 2019, Plaintiff applied

5    for housing at Sorrento Tower, a housing complex located in San Diego, California. (Doc.

6    44 at 1; Doc. 45–1 at 7.)  Sorrento Tower is a recipient of federal and state low-income

7    funding and grants subsidized by the U.S. Department of Housing and Urban Development.

8    (Doc. 44 at 3.)  On March 17, 2021, Sorrento Tower sent Plaintiff a letter informing him

9    that he was in the top ten of housing applicants on the waitlist and would need to schedule

10   an appointment before March 31, 2021.  (Doc. 44 at 3; Doc. 45–1 at 7.)  Plaintiff scheduled

11   an interview for April 5, 2021 and flew from Minneapolis to San Diego on April 4, 2021.

12   (Doc. 44 at 3.)

13       On April 5, 2021, Plaintiff met with a representative of Sorrento Tower "and

14   completed the pre-application process including release forms of consent for personal

15   information." (Doc. 44 at 3; Doc. 45–1 at 7.)  On April 8, 2021, Plaintiff received a letter

16   from Sorrento Tower informing him his application was denied because of his criminal

17   history, and Plaintiff subsequently requested an appeal hearing.  (Doc. 44 at 4; Doc. 45–1

18   at 7.)  Plaintiff had his appeal hearing on May 5, 2021, and Sorrento Tower explained that

19   "Plaintiff put an 'X' on the 'YES' box acknowledging he was a [s]ex-[o]ffender." (Doc.

20   44 at 5.)  When Plaintiff insisted he never marked that box, he was instructed to "scratch

21   out the 'X' and initial it, which Plaintiff did." (Doc. 44 at 5; Doc. 45–1 at 7.)  Sorrento

22   Tower then allowed Plaintiff to amend his application. (Doc. 45–1 at 7.)  A representative

23   of Defendants "indicated they would have to run an extensive investigative background

24   check on all 50 states to verify Plaintiff's claim of innocence to this serious accusation."

25   (Doc. 44 at 6.)

26       On May 13, 2021, Plaintiff inquired about an update on the second criminal

27   background report, and "Sorrento Tower emailed Plaintiff that the preliminary report

28   indicated that he had failed the pre-screening criteria, but Sorrento Tower had ordered an

1    out-of-state request and would contact Plaintiff once that request was completed." (Doc.

2    44 at 6; Doc. 45–1 at 8.)  On June 15, 2021, Sorrento Tower emailed Plaintiff and stated

3    the out-of-state background check was complete and that Plaintiff was again added to the

4    waitlist. (*Id.*)  On July 30, 2021, Sorrento Tower contacted Plaintiff and informed him he

5    was on the top of the waitlist and that his application would be cancelled if he did not

6    schedule an interview by August 13, 2021. (Doc. 44 at 7; Doc. 45–1 at 8.)

7          On August 17, 2021, Sorrento Tower mailed Plaintiff a letter explaining his

8    application was cancelled because he failed to schedule an interview and that he had

9    fourteen days to appeal the decision. (Doc. 45–1 at 8.)  On November 1, 2021, Plaintiff

10   "emailed a formal request to RealPage/Leasing Desk to provide information of all dates

11   and times when Defendants requested Plaintiff's background report information." (Doc.

12   44 at 8.)  Plaintiff claims the report shows that "Defendants were dishonest when [they]

13   stated that they requested [a] report between the dates of April 5, 2021, through April 8,

14   2021 . . . [a]n actual report was requested by Defendants only once on May 6, 2021 after

15   the May 5, 2021 meeting." (*Id.* at 9.)

16         On September 1, 2021, Plaintiff filed an initial complaint against Defendants (Doc.

17   1) and subsequently filed a First Amended Complaint on January 21, 2022 (Doc. 10).

18   Defendants filed a Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 28),

19   which the Court granted allowing Plaintiff forty-five (45) days leave to amend to file a

20   second amended complaint, if any (Doc. 43).  Plaintiff filed a Second Amended Complaint

21   on November 17, 2022 asserting the following causes of action: (1) violation of 42 U.S.C.

22   § 3604(b), (2) violation of 42 U.S.C. § 3617, and (3) defamation.[1] (*See* Doc. 44.)  Plaintiff

23   again contends that he was racially discriminated against by Defendants because

24

25

26   [1] The Court presumes the defamation claim to be an alleged violation of California Civil
     Code §§ 44, 45(a), which are the civil code sections Plaintiff brought his defamation claims
27   under in the First Amended Complaint. *See Karim-Panahi*, 839 F.2d at 623 (when an
     action is filed by a pro se litigant, "the court must construe the pleadings liberally and must
28   afford plaintiff the benefit of any doubt").

1 Defendants rejected his housing application and falsified information to indicate he is a

2 registered sex offender.  (*Id.* at 1–2.)  On December 1, 2022, Defendants filed the instant

3 Motion arguing that Plaintiff lacks Article III standing for failure to prove any injury and

4 that Plaintiff's complaint fails to state any cognizable claim upon which relief can be

5 granted.  (Doc. 45 at 2.)

6                                    **II.    LEGAL STANDARD**

7         In order to establish standing to bring an action under Article III of the Constitution,

8 a plaintiff must show that:

9         (1) she has suffered an "injury in fact—an invasion of a legally protected
          interest which is (a) concrete and particularized . . . and (b) actual or imminent,
10        not conjectural or hypothetical"; (2) there exists "a causal connection between
          the injury and the conduct complained of"; and (3) it is "likely, as opposed to
11        merely speculative, that the injury will be redressed by a favorable decision."

12

13 *Phelps v. Navient Sols., Inc.*, No. 216CV2798GEBKJNPS, 2017 WL 68172, at *2 (E.D.

14 Cal. Jan. 6, 2017) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

15        Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), an action may be

16 dismissed for failure to allege "enough facts to state a claim to relief that is plausible on its

17 face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial

18 plausibility when the plaintiff pleads factual content that allows the court to draw the

19 reasonable inference that the defendant is liable for the misconduct alleged.  The

20 plausibility standard is not akin to a 'probability requirement,' but it asks for more than a

21 sheer possibility that a defendant acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

22 (2009) (internal citations omitted).  For purposes of ruling on a Rule 12(b)(6) motion, the

23 Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings

24 in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine*

25 *Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

26        Moreover, the Court is required to liberally construe the filings of a pro se litigant.

27 *Draper v. Rosario*, 836 F.3d 1072, 1080 (9th Cir. 2016); *see also Estelle v. Gamble*, 429

28 U.S. 97, 106 (1976) (explaining that a document filed pro se "is to be liberally construed").

1  However, in giving liberal interpretation to a pro se complaint, courts may not "supply

2  essential elements of claims that were not initially pled." *Ivey v. Bd. of Regents of the Univ.*

3  *of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

4  ### III.   DISCUSSION

5  ####   A.   Request for Judicial Notice

6  A court generally cannot consider materials outside the pleadings on a motion to

7  dismiss for failure to state a claim. FED. R. CIV. P. 12(d). A court may, however, consider

8  materials subject to judicial notice without converting the motion to dismiss into one for

9  summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994). Under Federal

10 Rule of Evidence 201(b), a court may take judicial notice, either on its own accord or by a

11 party's request, of facts that are not subject to reasonable dispute because they are (1)

12 "generally known within the trial court's territorial jurisdiction; or (2) can be accurately

13 and readily determined from sources whose accuracy cannot reasonably be questioned."

14 FED. R. EVID. 201(b). A court may also take judicial notice of "matters of public record

15 without converting a motion to dismiss into a motion for summary judgment." *Lee v. City*

16 *of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (internal citations omitted). Finally,

17 under the incorporation by reference doctrine, courts may "take into account documents

18 whose contents are alleged in a complaint and whose authenticity no party questions, but

19 which are not physically attached to the [plaintiff's] pleading." *Davis v. HSBC Bank*

20 *Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012) (internal quotations and citations

21 omitted). The incorporation by reference doctrine "treats certain documents as though they

22 are part of the complaint itself," *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002

23 (9th Cir. 2018), so long as "the plaintiff refers extensively to the document or the document

24 forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 907 (9th

25 Cir. 2003).

26 Defendants request the Court take judicial notice of nine exhibits:

27 (1) Exhibit A: Dkt. 12 at 2 that Plaintiff labeled Exhibit 1;
   (2) Exhibit B: Sorrento Tower Background Screening Consent Form Signed

28

3:21-cv-01554-RBM-JLB

1    by Warren Nelson on April 5, 2021;

     (3) Exhibit C: Dkt. 14 at 3 that Plaintiff labeled Exhibit 18;

2      (4) Exhibit D: Dkt. 14 at 6 that Plaintiff labeled Exhibit 21;

3      (5) Exhibit E: Dkt. 14 at 12 that Plaintiff labeled Exhibit 23;

     (6) Exhibit F: Dkt. 14 at 15-16 that Plaintiff labeled Exhibit 25;

4      (7) Exhibit G: Application Rejection from Sorrento Tower to Warren Nelson

5      on August 17, 2021;

     (8) Exhibit H: Dkt. 14 at 27-29 that Plaintiff labeled Exhibit 28;

6      (9) Exhibit I: Dkt. 43 Order Granting Defendants Motion to Dismiss

7

8 (Doc. 45–2 at 2.)  The Court takes judicial notice of Exhibits A, B, C, D, E, F, G, and H.

9 Plaintiff incorporates these documents by reference into his Second Amended Complaint

10 and relies on the existence of such documents in alleging Sorrento Tower engaged in

11 discriminatory practices.   (*See* Doc. 44 at 3, 5–8, 10–11, 13); s*ee also Doe v.*

12 *Successfulmatch.com*, No. 13-CV-03376-LHK, 2014 WL 1494347, at \*2 (N.D. Cal. Apr.

13 16, 2014) ("[w]hile a district court generally may not consider any material beyond the

14 pleadings in ruling on a Rule 12(b)(6) motion, a court may take judicial notice of

15 documents referenced in the complaint"); *Golub v. Gigamon Inc.*, No. 17-CV-06653-

16 WHO, 2019 WL 4168948, at \*6 (N.D. Cal. Sept. 3, 2019), *aff'd*, 994 F.3d 1102 (9th Cir.

17 2021), and *aff'd*, 847 F. App'x 368 (9th Cir. 2021) ("[a] court may [] take judicial notice

18 of documents on which allegations in the complaint necessarily rely, even if not expressly

19 referenced in the complaint, provided that the authenticity of those documents are not in

20 dispute").  While Plaintiff does not specifically address Defendants' request for judicial

21 notice, it appears Plaintiff does not question the existence or authenticity of the documents,

22 as he himself references them.  To the extent Plaintiff may oppose the truth of the contents

23 of the documents, the Court notes it is not bound to take judicial notice of the truth of the

24 matters asserted therein.  *See Khoja*, 899 F.3d at 999 ("[j]ust because the document itself

25 is susceptible to judicial notice does not mean that every assertion of fact within that

26 document is judicially noticeable for its truth").

27      The Court takes also judicial notice of Exhibit I, which is the Court's Order Granting

28 Defendants' Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 43).  *See Hayes*

1  *v. Woodford*, 444 F. Supp. 2d 1127, 1136 (S.D. Cal. 2006), *aff'd*, 276 F. App'x 576 (9th

2  Cir. 2008) ("[c]ourts may take judicial notice of their own records"); *see also Gerritsen v.*

3  *Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1034 (C.D. Cal. 2015) ("[i]t is well

4  established that a court can take judicial notice of its own files and records under Rule 201

5  of the Federal Rules of Evidence").

6      B.    Standing

7      As an initial matter, Defendants argue that Plaintiff lacks Article III standing because

8  he "he has failed – for the second time – to plead he suffered any actual injury." (Doc. 45–

9  1 at 11 (quoting Doc. 44 at 12).)  Defendants contend that "Plaintiff relies primarily on

10  conclusory statements to allege injury, that Plaintiff has 'suffered injury and damages' as

11  a result of Defendants." (Doc. 45–1 at 11.)  However, Plaintiff "fails to offer any [f]acts

12  that he has been injured as a result of Sorrento Tower." (*Id.*)  Defendants further explain

13  Plaintiff does allege he entered a homeless shelter and contracted food poisoning, but

14  "there is simply no causal nexus between Plaintiff's stay at a homeless shelter or

15  contracting food poisoning and Sorrento Tower's actions." (*Id.* at 12.)  Moreover,

16  "considering the fact that Sorrento Tower continued to process Plaintiff's application, and

17  only cancelled the application when Plaintiff stopped responding, Plaintiff cannot plead

18  any facts to show he suffered an injury-in-fact." (*Id.*)  For the foregoing reasons,

19  Defendants request the Court dismiss this action for failure to establish Article III standing.

20  (*Id.*)

21      Plaintiff makes no specific counterarguments to the above allegations.  However,

22  the Court notes that Plaintiff's Second Amended Complaint generally alleges harm by

23  stating Plaintiff "has suffered injury and damages as a result of Defendants unethical

24  unlawful conduct" and that Plaintiff has experienced "reputational harm." (Doc. 44 at 9,

25  11.)  The Second Amended Complaint also alleges that on May 30, 2021, "after exhausting

26  all funds," Plaintiff entered a homeless shelter and contracted Covid-19 and food

27  poisoning. (*Id.* at 9.)  The Court finds such broad allegations of harm insufficient to

28  establish   an   injury-in-fact.   *See   Strojnik   v.   Capitol   Regency,   LLC*,   No.

7

1   219CV01587MCEKJNPS, 2021 WL 1721682, at *5 (E.D. Cal. Apr. 30, 2021) (concluding

2   the plaintiff's "broad and conclusory allegations" were "insufficient to establish an injury-

3   in-fact"); *see also Barnes v. Marriott Hotel Servs., Inc.*, No. 15-CV-01409-HRL, 2017 WL

4   635474, at *7 (N.D. Cal. Feb. 16, 2017) ("the injury alleged by the plaintiff . . . cannot be

5   based only on conclusory statements unsupported by specific facts").

6          This case revolves around whether Defendants engaged in discriminatory practices

7   prohibiting Plaintiff from obtaining housing at Sorrento Tower.  In construing all the well-

8   pleaded allegations in the complaint as true, the Court can rely upon Plaintiff's assertion

9   that he did not actually mark the sex offender box. (Doc. 10 at 6, ¶ 24.)  However, this

10  mistake on the application by itself, is insufficient to establish causation of injury because

11  once Defendants were notified of the mistake, it was immediately cured.  *See Maya v.*

12  *Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011) (quoting *Allen v. Wright*, 468 U.S. 737,

13  757 (1984)) ("[t]o survive a motion to dismiss for lack of constitutional standing, plaintiffs

14  must establish a 'line of causation' between defendants' action and their alleged harm that

15  is more than 'attenuated'"); *see also Harris v. Itzhaki*, 183 F.3d 1043, 1050 (9th Cir. 1999)

16  (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 364 (1982)) (to establish a claim

17  under the Fair Housing Act, a plaintiff must allege "that as a result of the defendant's

18  [discriminatory conduct] he has suffered a distinct and palpable injury").  The Court

19  maintains that while it may have been frustrating for Plaintiff to reinitiate the application

20  process, it appears Defendants gave Plaintiff ample opportunity to do so, and Plaintiff was

21  not outrightly prohibited from residing at Sorrento Tower.

22         Moreover, Plaintiff fails to show that his alleged injury regarding his stay at a

23  homeless shelter and contracting Covid-19 and food poisoning is sufficiently related to

24  Defendants' conduct.  Plaintiff has not pled a causal nexus between staying at a homeless

25  shelter and Defendants' initial denial of Plaintiff's application.  *See City of Los Angeles v.*

26  *Wells Fargo & Co.*, 22 F. Supp. 3d 1047, 1053 (C.D. Cal. 2014) (finding the "causal chain"

27  between the alleged injury and the alleged conduct is "too attenuated" when there are too

28  many links in the causal chain); *see also Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S.

1    26, 41 (1976) (noting that Article III "requires that a federal court act only to redress injury

2    that fairly can be traced to the challenged action of the defendant").  Plaintiff had housing

3    in Minnesota at the time he applied for housing at Sorrento Tower, and there are no facts

4    to indicate Defendants knew Plaintiff would be staying at a homeless shelter.

5            C.      Failure to State a Claim

6            Even if Plaintiff could clearly establish standing, the Court finds the allegations in

7    the complaint insufficient to state a claim against Defendants.

8                    i.      *Claim One – 42 U.S.C. § 3604(b)*

9            Plaintiff's first cause of action alleges that Defendants violated the Fair Housing Act

10   ("FHA") under 42 U.S.C. § 3604, which states that it is unlawful "[t]o discriminate against

11   any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the

12   provision of services or facilities in connection therewith, because of race, color, religion,

13   sex, familial status, or national origin."  (Doc. 40 at 10–12); 42 U.S.C.A. § 3604 (West).

14   Defendants argue that "Plaintiff fails to plead non-conclusory allegations as to how

15   Defendant's actions violated FHA section 3604(b)."  (Doc. 45–1 at 13.)

16           Plaintiff alleges that "Defendants discriminated against [Plaintiff] in the terms,

17   conditions, and privileges of the rental at Sorrento Tower" including that Defendants

18   passed over Plaintiff's application in favor of white applicants, falsely claimed Plaintiff

19   was a sex offender, denied Plaintiff access to copies of the information Defendants used to

20   reject Plaintiff's housing application, refused to run a background check, etc.  (Doc. 44 at

21   10–11.)

22           The Court finds these allegations are conclusory and insufficient to state a claim that

23   Defendants discriminated against Plaintiff in violation of section 3604.  *See Ashcroft*, 556

24   U.S. at 686 ("the Federal Rules do not require courts to credit a complaint's conclusory

25   statements without reference to its factual context").  When Plaintiff insisted he never

26   marked the box indicating he was a sex offender, Defendants allowed Plaintiff to amend

27   his housing application, and Plaintiff was not ultimately denied housing.  (*See* Doc. 44 at

28   5; Doc. 45–1 at 7–8.)  Plaintiff claims Defendants refused to run a background check or

1    provide him with information in his file.  (Doc. 44 at 1.)  However, the complaint lacks any

2    information as to whether Defendants' alleged actions were motivated by Plaintiff's race

3    (*see id.* at 10–12).  *See Cabrera v. Alvarez*, 977 F. Supp. 2d 969, 976 (N.D. Cal. 2013)

4    ("[t]he complaint alleges no facts from which the Court can reasonably infer that

5    defendants subjected plaintiffs to explicitly differential treatment"); *Bryant v. Steinburg*,

6    No. 222CV1308TLNKJNPS, 2022 WL 4961813, at *4 (E.D. Cal. Oct. 4, 2022) (explaining

7    the plaintiff "fails to allege facts to allow the court to reasonably infer discriminatory

8    conduct against a protected class"); *see also Moralez v. Whole Foods Mkt. California, Inc.*,

9    No. 14-CV-05022-EMC, 2016 WL 845291, at *2 (N.D. Cal. Mar. 4, 2016) (finding that

10   "Plaintiff pleads no facts that demonstrate any of the actions that occurred were related to

11   racial discrimination.  At most, Plaintiff alleges her personal belief that . . . there is 'no

12   other explanation for her disparate treatment' other than her race").

13        Moreover, as previously noted, even if Plaintiff alleged facts sufficient to state a

14   claim, Plaintiff has not shown an injury-in-fact.  *See supra* pp. 5–7.  Thus, the Court finds

15   Plaintiff's first cause of action fails to state a claim.

16             *ii.      Claim Two – 42 U.S.C. § 3617*

17        Plaintiff's second cause of action alleges Defendants violated the FHA under 42

18   U.S.C. § 3617, which prohibits retaliation against any "person in the exercise or enjoyment

19   of, any right granted or protected" by the FHA.  42 U.S.C.A. § 3617 (West).  The Second

20   Amended Complaint provides that on April 22, 2021, Plaintiff sent a letter to Defendants

21   notifying them of his demand for an appeal hearing "to repudiate [Defendants'] findings

22   that led to the rejection of Plaintiff's rental application." (Doc. 44 at 12.)  Plaintiff explains

23   that "[i]n response, Defendants took [] adverse action" by "subject[ing] Plaintiff to

24   senseless delays totaling 113 days of intentional misinformation, and false knowledge in

25   which Defendants failed to protect Plaintiff from continued retaliation caused by their

26   representatives." (*Id.*)  Thus, Plaintiff claims he "suffered injury and damages" as a result

27   of this conduct.  (*Id.*)

28   / / /

1    Defendants argue that Plaintiff fails to plead plausible facts indicating that
2    Defendants subjected Plaintiff to any adverse action in violation of 42 U.S.C. § 3617. (Doc.
3    45–1 at 15.)  There are no "facts demonstrating that he suffered any cognizable adverse
4    action or that there was any causal nexus between a protected activity and an adverse
5    action." (*Id.* at 16.)  Additionally, "Plaintiff's allegation of retaliation contradicts the fact
6    that Sorrento Tower continued processing Plaintiff's application up until Plaintiff failed to
7    contact Sorrento Tower to schedule an interview after he had reached the top of the
8    waitlist." (*Id.*)

9    The Court concludes Plaintiff has not adequately alleged that Defendants subjected
10   Plaintiff to adverse action for involvement in a protected activity.  *See Walker v. City of*
11   *Lakewood*, 272 F.3d 1114, 1128 (9th Cir. 2001) ("[t]o establish a prima facie case of
12   retaliation, a plaintiff must show that (1) he engaged in a protected activity; (2) the
13   defendant subjected him to an adverse action; and (3) a causal link exists between the
14   protected activity and the adverse action").  In reviewing the Second Amended Complaint,
15   the Court finds Plaintiff was permitted to amend his housing application upon notifying
16   Defendants of the alleged mistake, which contradicts Plaintiff's claim of retaliation.
17   Moreover, the Court notes Plaintiff's allegations are yet again overly broad.  Thus, based
18   on the facts alleged, Plaintiff fails to state a claim pursuant to 42 U.S.C. § 3617.

19                *iii.    Claim Three – California Civil Code §§ 44, 45a*

20   Plaintiff's third cause of action alleges defamation, which the Court notes is outlined
21   California Civil Code §§ 44 and 45a.  (Doc. 44 at 12–13); Cal. Civ. Code §§ 44, 45(a)
22   (West).  California Civil Code § 44 provides that defamation is effected by either libel or
23   slander.  Cal. Civ. Code § 44 (West).  California Civil Code § 45a provides that "[a] libel
24   which is defamatory of the plaintiff without the necessity of explanatory matter, such as an
25   inducement, innuendo or other extrinsic fact, is said to be a libel on its face.  Defamatory
26   language not libelous on its face is not actionable unless the plaintiff alleges and proves
27   that he has suffered special damage as a proximate result thereof." Cal. Civ. Code § 45a
28   (West).  "Defamation requires the intentional publication of a false statement of fact that

11

1  has a natural tendency to injure the plaintiff's reputation or that causes special damage."

2  *Burrill v. Nair*, 217 Cal. App. 4th 357, 383 (2013).  The elements of a defamation claim

3  are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural

4  tendency to injure or causes special damage.  *Wong v. Jing*, 189 Cal. App. 4th 1354, 1369

5  (2010).

6        The Second Amended Complaint alleges that "Defendants made false and

7  defamatory statements about [Plaintiff], in particular that [Plaintiff] was a Sex Offender,

8  and knew the statements to be untrue" and that "Defendants communicated their false and

9  defamatory statements about [Plaintiff] to others."  (Doc. 44 at 13.)  Plaintiff contends

10  "Defendants' false and defamatory statements about Plaintiff had a tendency to harm, and

11  have in fact harmed, [Plaintiff's] reputation . . . causing significant delay in Mr. Nelson's

12  ability to find residence to rent subsidized housing . . . ."  (*Id.*)

13        Defendants explain that Plaintiff's defamation allegations are "the exact same

14  conclusory proffers Plaintiff plead in the now dismissed [First Amended Complaint]" and

15  that "Plaintiff provides no additional facts to indicate how Sorrento Tower made the

16  defamatory statements."  (Doc. 45–1 at 17.)  Defendants also note that Plaintiff pleads only

17  the conclusory statement that his reputation has been harmed because family and friends

18  believe he is a sexual predator and that it is difficult to find subsidized housing in San

19  Diego.  (*Id.* at 18.)  However, Plaintiff does not allege any act by Defendants that made it

20  more difficult for Plaintiff to obtain housing nor does Plaintiff allege "that Sorrento Tower

21  told his friends and family he was a sexual predator."  (*Id.*)

22        As an initial matter, the Court notes the Second Amended Complaint does not make

23  clear whether Defendants actually made statements or shared information indicating

24  Plaintiff was a sex offender.  It is unclear whether such unknown statements were in fact

25  published and, if so, Plaintiff does not provide any facts to show Defendants knew the

26  information was false.  In any event, is also unclear whether such information has

27  prohibited Plaintiff from securing housing and whether Plaintiff has suffered any injury.  It

28  is the Court's understanding that Plaintiff resides at his same housing in Minnesota and

12

1   that he has not attempted to apply for housing elsewhere.  Moreover, Plaintiff's general

2   allegation that "Defendants made false and defamatory statements about [Plaintiff]" (*see*

3   Doc. 44 at 13) is both broad and conclusory.  *See Rivers v. Skate Warehouse, LLC*, No.

4   CV1209946MMMCWX, 2013 WL 12128800, at *13 (C.D. Cal. Apr. 15, 2013) (noting

5   that "broad and conclusory pleading is insufficient to state a claim for relief").  Absent

6   additional information, the Court concludes Plaintiff's complaint fails to sufficiently plead

7   a cause of action for defamation pursuant to California Civil Code §§ 44 and 45a.

8         D.    <u>Leave to Amend</u>

9         Courts will usually allow a pro se plaintiff to amend their complaint in order to

10  attempt to address the pleading deficiencies.  *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039

11  (9th Cir. 2015) ("[a] district court should not dismiss a pro se complaint without leave to

12  amend unless 'it is absolutely clear that the deficiencies of the complaint could not be cured

13  by amendment'") (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)).  When a

14  plaintiff is pro se, "the court is particularly liberal in construing the complaint in his favor."

15  *Moore v. United States*, 193 F.R.D. 647, 651 (N.D. Cal. 2000) (citing *Glendora v.*

16  *Cablevision Systems, Corp.*, 45 F.3d 36, 37 (2nd Cir.1995)).  However, "a court may

17  dismiss a pro se litigant's complaint without leave to amend if it appears beyond a doubt

18  that the plaintiff can prove no set of facts that would entitle him to relief and this defect

19  cannot be cured by amendment." *Moore*, 193 F.R.D. at 651.  When determining whether

20  to grant leave to amend, courts generally consider five factors, known as the *Foman* factors

21  as stated by the Supreme Court in *Foman v. Davis*, 371 U.S. 178, 182 (1962).  These factors

22  include: (1) undue delay; (2) bad faith on the part of the party seeking leave to amend; (3)

23  undue prejudice to the non-moving party; (4) futility of amendment; and (5) whether the

24  plaintiff has previously amended the complaint. *Id*.

25        The Court previously advised Plaintiff as to the deficiencies in the First Amended

26  Complaint and granted leave to amend the complaint in its November 7, 2022 order. (*See*

27  Doc. 43.)  Now, in reviewing Plaintiff's Second Amended Complaint, the Court finds

28  Plaintiff has not remedied the pleading deficiencies noted.  (*See id.*; *see also* Doc. 44.)

1  Plaintiff has failed to plead any factual content which would allow the Court to draw the

2  reasonable inference that Defendants may be held liable for any wrongful conduct.  *See*

3  *Iqbal*, 556 U.S. at 678.  In reviewing the *Foman* factors, the Court notes the first three

4  factors do not weigh strongly in favor of either party.  However, the Court does find that

5  any amendment would be futile.  *See Yentz v. Nat'l Credit Adjusters, LLC*, No. 3:20-CV-

6  01364-AC, 2021 WL 1277961, at *2 (D. Or. Feb. 15, 2021), *report and recommendation*

7  *adopted*, (D. Or. Apr. 6, 2021) ("[a] proposed amendment is futile if the plaintiff could not

8  allege a set of facts that would constitute a claim or defense").  Additionally, in examining

9  the final factor, the Court notes this is Plaintiff's third attempt to state a claim for relief,

10  and Plaintiff has had sufficient opportunity to amend the deficiencies.  (*See* Docs. 1, 10,

11  44.)

12        Therefore, the Court dismisses Plaintiff's Second Amended Complaint without

13  leave to amend.  *See Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1039 (9th Cir. 2002)

14  ("[b]ecause any amendment would be futile, there was no need to prolong the litigation by

15  permitting further amendment"); *Doe v. Fed. Dist. Ct.*, 467 F. App'x 725, 728 (9th Cir.

16  2012) (finding the district court acted within its discretion in dismissing pro se plaintiff's

17  complaint with prejudice and without leave to amend when "the district court had good

18  reason to believe that further amendments would be futile and prejudice the defendants").

### IV.   CONCLUSION

20        Based on the foregoing, the Court **GRANTS** Defendants' Motion (Doc. 45) and

21  **DISMISSES WITH PREJUDICE** Plaintiff's Second Amended Complaint for failure to

22  state a claim upon which relief may be granted **WITHOUT LEAVE TO AMEND**.

23        **IT IS SO ORDERED.**

24  DATE:  April 24, 2023

25        _____

26        HON. RUTH BERMUDEZ MONTENEGRO
       UNITED STATES DISTRICT JUDGE

27

28

3:21-cv-01554-RBM-JLB